The Honorable Bryan B. King State Representative 871 County Road 814 Green Forest, AR 72638-2657
Dear Representative King:
I am writing in response to your request for an opinion on the following:
 (1) Is it permissible for Eureka Springs to use another law to create the Eureka Springs Advertising and Promotions Commission other than the law enacted in Act 464 of 2007?
 (2) I have attached Proposed Ordinance 2060, wherein the tourism tax will be raised from two percent to three percent. May the increase be voted on by ordinance, or can it only be raised by public vote?
 (3) Also regarding proposed ordinance 2060 must there be specific seats designated on the commission for the collectors of the tax (i.e. two seats for lodging and two seats for restaurants)?
 (4) Is it against the law to alter the appointment process and put all appointment/approvals in the hands of the sitting commissioners and not appointed by the mayor/ratified by the city council?
 (5) The Proposed Ordinance 2060 would allow one commissioner who resides outside of the city limits but inside the county limits.
 a) Is this contrary to state law? If not, *Page 2 
 b) must that person be required to be an owner or operator of a lodging or restaurant facility located inside the city limits that collects the tourism enhancement tax?
 (6) The proposed Ordinance also allows for persons in "tourism related" business to serve on the commission. Must a commissioner be a lodging or restaurant owner or manager (one that collects the tax)?
 (7) Proposed Ordinance 2060 refers only to hotels and motels as collectors of the tax. Should the words "cabins, cottages, bed and breakfasts" etc. be added to clarify and specifically name those businesses as collectors?
REPONSE
In my opinion, as a general matter, with respect to Question One, the City of Eureka Springs is authorized to use either A.C.A. § 26-75-601 — 618 (Repl. 1997 Supp. 2007) or A.C.A. § 26-75-701 — 705 (Repl. 1997 Supp. 2007) to create its Advertising and Promotion Commission ("A 
P Commission"). Practical considerations, however, come into play in the transition from one subchapter to the other. For example, if the proceeds of any preexisting gross receipts "hamburger tax" are pledged to secure bonds, A.C.A. § 26-75-613(b)(2) (Repl. 1997) may prevent abolishing or altering any existing tax levied to support them. In addition, if the previously existing tax was subjected to a vote of the people, a question arises as to whether it may be altered or abolished without a subsequent vote of the people. I thus cannot conclusively opine on these issues in the absence of a review of all the surrounding facts and circumstances. Local counsel should be consulted in this regard. With respect to Question Two, Proposed Ordinance 2060 appears to be an attempt to change the existing A P Commission from one organized under A.C.A. § 26-75-703
(Supp. 2007) to one organized under A.C.A. § 26-75-605 (Supp. 2007). Assuming that the preexisting tax was not referred to a vote of the people pursuant to A.C.A. § 26-75-702 (Repl. 1997), and that no bonds are outstanding, in my opinion Eureka Springs may abolish the preexisting tax and levy a new tax pursuant to A.C.A. § 26-75-601-618 of up to 3% by ordinance without a vote of the people. With respect to Question Three, A.C.A. § 26-75-605 requires that four members of the A P Commission be the owners or managers of businesses related to the tourism industry with three of those four being owners or managers of hotels, motels, or restaurants. With respect to Question Four, in my *Page 3 
opinion if a city organizes an A P Commission pursuant to A.C.A. §26-75-605, the statute requires that appointment power be vested in the A P Commission with the approval of the nominations placed in the governing body of the municipality. With respect to Question Five, I regret that I am unable to offer an opinion of this matter because of pending litigation. With respect to Question Six, I agree with the conclusion of one of my predecessor's in Op. Att'y Gen. 2002-305 that A.C.A. § 26-75-605 requires all tourism industry representatives on an A P Commission to be managers or owners of businesses in the tourism industry with at least three of the four being managers or owners of hotels, motels, or restaurants. With respect to Question Seven, it is the policy of this office not to offer advice in drafting local ordinances to local officials. Consultation with local counsel is recommended.
Question One: Is it permissible for Eureka Springs to use another lawto create the Eureka Springs Advertising and Promotions Commission otherthan the law enacted in Act 464 of 2007?
In my opinion, the City of Eureka Springs is authorized to utilize either A.C.A. §§ 26-75-701 — 705 or § 26-75-601 — 618 to create an Advertising and Promotion Commission, unless there are outstanding bonds secured by a pledge of the revenue of the gross receipts "hamburger tax" under a covenant similar to the language incorporated in A.C.A. §26-75-613(b)(2).
There are only two subdivisions in the Arkansas Code of possible applicability. Generally, A.C.A. § 26-75-601-618 allows municipalities in the State to create an A P Commission to oversee the use of funds collected pursuant to a special gross receipts tax commonly referred to as the "hamburger tax." This subchapter was originally enacted byAct 185 of 1965. The original act allowed cities of the first class with a population exceeding 25,000 to impose a 1% gross receipts tax on hotel or motel accommodations and restaurants, cafes, cafeterias, and other establishments engaged in the business of preparing food for consumption on the premises. The law was amended in 1969 to apply to all cities of the first class regardless of population. See Acts 1969, No. 123. This Act has been subsequently amended a number of times resulting in the present A.C.A. § 26-75-602 (Supp. 2007) which authorizes all classifications of municipalities to now impose a gross receipts tax of up to 3% on the listed businesses. The rate was increased to the present 3% by Act 626 of 1989. *Page 4 
By contrast, A.C.A. § 26-75-701 — 705 was enacted by Act 478 of 1985, which authorizes a city of the first class with less than five thousand residents, that has some portion of the city designated a Historical District and is included on the National Register of Historic Places, to levy a gross receipts tax of up to 2% on business in the tourism industry, including "gift shops" and certain other businesses not covered by A.C.A. § 26-75-602. Prior to the adoption of this Act in 1985, the earlier 1965 Act was amended by Act 178 of 1977 to include a provision allowing a city of the first class with an historic district and listed on the National Registrar of Historic Places to levy a gross receipts tax not to exceed 2% on the lodging and restaurant businesses in the city. This was added when the general authority of cities was limited to only a 1% tax and its purpose was to provide additional funds to such cities. See Acts 1977, No. 178, § 8. Act 478 of 1985 later allowed a city that meets the historic requirements to levy a gross receipts tax of up to 2% on lodging and restaurant businesses and also expanded that authority to allow the city to levy the tax on gift shops that primarily sold gifts or souvenirs to tourists. Act 478 of 1985, § 1. This new Act was codified in a separate subchapter, now A.C.A.§ 26-75-701 — 705. The General Assembly noted the nature of this increased tax base in § 7 of Act 478 of 1985 by stating in the emergency clause that:
 [T]his Act is necessary in order to enable cities to provide for a levy of a two percent (2%) tax upon the gross receipts or the gross proceeds derived from the sale of tangible personal property sold by gift shops in such cities in addition to taxes now authorized to be levied by Act 185 of 1965, as amended . . .
This act, Act 478 of 1985, has been amended several times in the past twenty years, most recently, as you note, by Act 464 of 2007.
In response to your first question, it is apparent that the only statutory scheme other than A.C.A. § 26-75-701 — 705 for creating an A P Commission pursuant to the levy of a "hamburger tax" is A.C.A. §26-75-601 — 618. Prior to Act 478 of 1985, a city, such as Eureka Springs, was authorized to levy up to a 2% tax on only restaurants and lodging businesses pursuant to A.C.A. § 26-75-602. Subsequently, the city's authority was expanded to levy the tax on gift shops inAct 478 of 1985. As noted above, however, A.C.A. § 26-75-602 was amended in 1989 to authorize a 3% "hamburger tax" on restaurants and lodging businesses while A.C.A. § 26-75-701, the codification of Act 478 of 1985
as amended, still only authorized a 2% tax for cities falling within its provisions, but on a broader variety of businesses. *Page 5 
In determining whether a municipality has any discretion to choose its type of A P Commission, it is helpful to look to the language of the statutes themselves. In pertinent part, A.C.A. § 26-75-602 states that any city of the first class "may" levy a gross receipts tax pursuant to that subchapter. If such a tax is levied, A.C.A. § 26-75-605(a) requires that the city "shall create" an A P Commission. Similarly, A.C.A. § 26-75-701 states in pertinent part that a municipality "may" levy a gross receipts tax pursuant to that subchapter. If such a tax is levied, A.C.A. § 26-75-703 requires that the city "shall . . . create" an A P Commission.
The Arkansas Supreme Court consistently interprets the term "may," as used in statutory language, as implying permissive or discretionary, rather than mandatory, action or conduct. The court usually construes the term in a permissive sense. See, e.g., Stilley v. James, 347 Ark. 74,60 S.W.3d 410 (2001). Eureka Springs, according to my understanding, falls within the conditions of A.C.A. § 26-75-701 and would be authorized to levy a gross receipts tax and create an A P Commission pursuant to those provisions. Eureka Springs, however, also meets the broader requirements of A.C.A. § 26-75-602, and "may" levy a gross receipts tax and create an A P Commission under those provisions. That statute applies generally to all cities of the first class, cities of the second class, and incorporated towns. In my opinion, Eureka Springs may choose to create an A P Commission under the provisions of A.C.A. §26-75-601-618 rather than A.C.A. §§ 26-75-701-705 as amended byAct 464 of 2007. This is true unless the General Assembly, in enacting Acts 179 of 1977 and 478 of 1985, intended to preclude the cities described therein from utilizing the previously applicable provisions ofAct 165 of 1985, as subsequently amended by Act 626 of 1989, which increased the allowable levy to 3%. I cannot infer any such proscription from the legislative history.
It is my understanding, however, that Eureka Springs has an existing A P Commission pursuant created pursuant to A.C.A. § 26-75-701 — 705. Proposed Ordinance 2060 appears to be an attempt to change the existing A P Commission, under A.C.A. § 26-75-703, into an A P Commission that is organized pursuant to A.C.A. § 26-75-605.
As an initial matter, I must state that it is the long standing policy of this office to decline to comment on the interpretation of a local ordinance, unless the question is regarding how a local ordinance would interact with state law. I address proposed Ordinance 2060 only to delineate how this proposed ordinance may interact with existing state law. *Page 6 
To organize an A P Commission under A.C.A. § 26-75-605, Eureka Springs must levy a "hamburger tax" pursuant to A.C.A. § 26-75-602. If Eureka Springs levies the "hamburger tax" authorized in A.C.A. § 26-75-602, the city is required by statute to create the A P Commission described in A.C.A. § 26-75-605. As noted above, the General Assembly passedAct 478 of 1985, to authorize certain municipalities to levy a "hamburger tax" on restaurants, lodging businesses, and gift shops, instead of solely on restaurants and lodging businesses. The language of the emergency clause of Act 478 and the legislative history recounted above, in my opinion, demonstrated the intent of the General Assembly to authorize a city such as Eureka Springs to levy a "hamburger tax" on the expanded class of businesses listed in A.C.A. § 26-75-701 rather than merely the more limited list in A.C.A. § 26-65-602. Eureka Springs may not, therefore, enact a tax under both A.C.A. § 26-75-602 and A.C.A. §26-75-701 simultaneously. If the City of Eureka Springs intends to levy a gross receipts tax under A.C.A. § 26-75-602, it must first presumably abolish any existing gross receipts tax under A.C.A. § 26-75-702.
There is no precedent in case law or the opinions of this office addressing the intricacies of converting one form of A P Commission into another or from changing the tax authorized by one subchapter to one authorized by the other. A municipal corporation of the first class is "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ." A.C.A. § 14-43-602 (Repl. 1998). The Code defines the term "municipal affairs" as meaning "all matters and affairs of government germane to, affecting, or concerning the municipality or its government. . . ." A.C.A. § 14-43-601(a)(1) (Repl. 1998). Municipal corporations in Arkansas, however, cannot pass any laws contrary to the general laws of the state. See Arkansas Const. Art. 12, §§ 3 and 4; andNahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). Nevertheless, a municipality may legislate regarding "state affairs" so long as the legislation is "not in conflict with state law." A.C.A. § 14-43-601(a)(2). In addition, despite the seemingly broad grant of authority in A.C.A. §14-43-602, the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of WestMemphis, 327 Ark. 324, 326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. Furthermore, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. *Page 7 Cosgrove, supra (citing City of Little Rock v. Cash, 277 Ark. 494, 501,644 S.W.2d 229 (1982)).
There is a clear grant of authority to a city of the first class to impose a "hamburger tax" and create an A P Commission. Because the provisions of A.C.A. § 26-75-602 and-701 are discretionary — the municipality has the choice of whether or not to levy a "hamburger tax" and create an A P Commission — in my opinion, a municipality who meets the standards of both sections must inherently have the authority to abolish one tax such that it can levy a tax under the other subchapter. Because a city, such as Eureka Springs, that meets the requirements necessary to levy a "hamburger tax" under either subchapter has the express authority to exercise its discretion under either, in my opinion the power to abolish a "hamburger tax" levied under one subchapter in favor of levying such a tax under the other subchapter is necessarily incident to the express power and discretion described above. The relevant issue in this instance is how the first such tax is abolished. As noted above, in my opinion, the authority and right to levy a "hamburger tax" includes the necessarily incident right to abolish that tax. The procedural requirements for abolishing a "hamburger tax," however, are not clear. The issue may be complicated by the provision below regarding a vote by the populace of the municipality.
However, A.C.A. § 26-75-702 provides:
 The governing body of a city levying the tax authorized in this subchapter shall submit the question of levying such a tax to the electors of the city, if petitions signed by not less than five hundred (500) qualified electors of the city requesting an election are filed with the governing body of the city within thirty (30) days after the adoption of the ordinance levying the tax.
 Id.[1] *Page 8 
I am unaware of whether the preexisting Eureka Springs "hamburger tax" was submitted to a vote of the electorate at the time of its adoption pursuant to A.C.A. § 26-75-702. If the preexisting "hamburger tax" was approved by a vote of the people pursuant to A.C.A. § 26-75-702, some question arises as to whether it may be abolished without a vote of the people.[2] I have found no controlling precedent on this question. If there was no referral to the populace, the city council would appear to be able to abolish the preexisting tax without a vote of the people.
I note the lack of statutory guidance regarding how to wind down an existing A P Commission as the new Commission is constituted. Significantly, this includes a lack of statutory guidance on how to properly abolish one "hamburger tax" so that the municipality may impose another. While the municipality may have the authority to abolish the tax as necessarily incident to the discretionary authority to impose a "hamburger tax" under either subchapter, the revenues collected pursuant to one tax must be spent in accordance with established purposes. See,e.g., Ark. Const. art. 16, § 11 (requiring the proceeds of every tax levied to be used solely for the purpose for which the tax was levied). If, for example, there are outstanding bonds secured by a pledge of revenue pursuant to A.C.A. § 26-75-613 the covenants contained in the ordinance pledging the tax revenue must be met prior to abolishing the tax. Absent an impediment such as revenue dedication, outstanding bonds, or a previous vote of the people, in my opinion Eureka Springs may be able to abolish the preexisting "hamburger tax" levied under A.C.A. §26-75-701 and the corresponding A P Commission to levy a new "hamburger tax" under A.C.A. § 26-75-602 with the new corresponding A 
P Commission. I must note, however, that unresolved factual issues prevent me from opining conclusively. Local counsel should be consulted and a review made of all relevant facts.
Question Two: I have attached Proposed Ordinance 2060, wherein thetourism tax will be raised from two percent to three percent. May theincrease be voted on by ordinance, or can it only be raised by publicvote?
In my opinion, it is not clear whether Eureka Springs may change the existing "hamburger tax" absent a vote of the people. Assuming, however, that Eureka Springs legally abolishes the preexisting "hamburger tax," A.C.A. § 26-75-602 authorizes the city to levy a 3% "hamburger tax" without a vote of the people. *Page 9 
I addressed the unclear nature of whether the preexisting "hamburger tax" in Eureka Springs was put to a vote and the unclear procedure regarding how to abolish the preexisting tax in response to Question One above.
Assuming that Eureka Springs abolishes the existing tax through a legal method, in my opinion A.C.A. § 26-75-602 authorizes a municipality to impose a gross receipts "hamburger" tax without a vote of the people. Specifically, A.C.A. § 26-75-602 provides that a gross receipts sales tax may be levied in conjunction with the creation of an A P Commission by ordinance as follows:
 (a) Any city of the first class, city of the second class, or incorporated town may, by ordinance of the governing body thereof, levy a tax not to exceed three percent (3%) upon the gross receipts or gross proceeds identified in subsection (c) of this section.
Id.
In my opinion, the plain and ordinary language of A.C.A. § 26-75-602
allows a city to levy a 3% "hamburger tax" by ordinance without a vote of the people.
Question Three: Also regarding proposed ordinance 2060 must there bespecific seats designated on the commission for the collectors of thetax (i.e. two seats for lodging and two seats for restaurants)?
As noted above, it appears that Ordinance 2060 would organize an A P Commission pursuant to A.C.A. § 26-75-605. The pertinent language of A.C.A. § 26-75-605 regarding seats on the A P Commission is as follows:
 (a) Any municipality levying a tax pursuant to this subchapter shall create by ordinance a municipal advertising and promotion commission, to be composed of seven (7) members, as follows:
 (1)(A) Four (4) members shall be owners or managers of businesses in the tourism industry, and the owner or manager shall reside in the levying municipality or, if the governing body of the municipality provides for by ordinance, the owner or manager may reside outside of the municipality but within the county in which the municipality is located. *Page 10 
 (B) At least three (3) of these members shall be owners or managers of hotels, motels, or restaurants and shall serve for staggered terms of four (4) years[.]
A.C.A. § 26-75-605.
By the plain and ordinary language of the statute, there is no requirement that the four seats filled by owners or managers of a tourism related industry must be filled by two owners or managers of lodging business and two owners or managers of restaurants. At least three of the four seats must, as noted above, be filled by owners or managers of hotels, motels, or restaurants.
This is distinct from the provisions of A.C.A. § 26-75-703, which specifies specific requirements for each of the seats on an A P Commission administering an "hamburger tax" levied pursuant to A.C.A. §26-75-701. Assuming that there is no impediment to the abolition of the existing "hamburger tax" and that Eureka Springs properly levies a new "hamburger tax" pursuant to A.C.A. § 26-75-602, the provisions of A.C.A. § 26-75-605 will determine the make-up of the new A P Commission, rather than A.C.A. § 26-75-703.
Question Four: Is it against the law to alter the appointment processand put all appointment/approvals in the hands of the sittingcommissioners and not appointed by the mayor/ratified by the citycouncil?
As noted above, there are two separate statutory schemes for establishing an A P Commission. In my opinion, if a city opts to utilize A.C.A. §§ 2 6 — 7 5 — 6 0 1-618, a city must conform to the requirements of A.C.A. § 26-75-605 with regard to filling vacancies on the commission. Specifically, A.C.A. § 26-75-605(d) requires that vacancies be filled by nomination of the commission and approval of the governing body of the municipality:
 (d) Whether resulting from expiration of a regular term or otherwise, a vacancy on the commission in any of the four (4) tourism industry positions provided for in subdivision (a)(1) of this section or in the at-large position provided for in subdivision (a)(3) of this section shall be filled by appointment made by the remaining members of the commission, with the approval of the governing body of the city.
Id. (emphasis added). *Page 11 
In my opinion, therefore, it is not unlawful for an A P Commission organized pursuant to A.C.A. § 26-75-605 to follow the statutory language of A.C.A. § 26-75-605. The language does provide that any nominee to fill a vacancy in the tourism industry positions must be approved by the governing body, or city council, of the city.
The mayoral appointment authority that you refer to originates in A.C.A. § 26-75-703, which provides in pertinent part:
 (a) Any city levying a tax pursuant to this subchapter shall, in the ordinance levying the tax, create a city advertising and promotion commission to be composed of seven (7) members as follows:
 (1) Four (4) members shall be hotel, motel, or restaurant owners or managers of businesses that collect the tax authorized under this subchapter and one (1) member shall be a gift shop owner or manager, each of whom shall be appointed by the mayor with the approval of the governing body of the city;
 (2) One (1) member who is appointed at large by the mayor with the approval of the governing body; and
 (3) The remaining two (2) members of the commission shall be the mayor and one (1) member of the governing body of the city selected by the governing body of the city, or two (2) members of the governing body of t he city as provided in the levying ordinance.
Id. (emphasis added). As noted above, if an A P Commission is organized under A.C.A. § 26-75-601 — 618, the appointment of new commissioners is governed by A.C.A. § 26-75-605, which requires that a vacant seat on the commission be filled by appointment by the remaining commissioners and approved by the governing body of the municipality. Assuming that there are no impediments to the abolition of the preexisting "hamburger tax," if Eureka Springs levies a new "hamburger tax" pursuant to A.C.A. § 26-75-602, in my opinion it is not against the law to place the duty of nominating individuals to fill vacant A P Commission seats in the remaining commissioners. *Page 12 
 Question Five: The Proposed Ordinance 2060 would allow one commissionerwho resides outside of the city limits but inside the county limits. Isthis contrary to state law? If not, must that person be required to be anowner or operator of a lodging or restaurant facility located inside thecity limits that collects the tourism enhancement tax?
I regret that I am unable to offer an opinion on this issue. Although I have a statutory duty to render my opinion to members of the legislature and various state officials regarding various matters of state law, see
A.C.A. § 25-16-706 (Repl. 2002), my office adheres to a long-standing policy against issuing opinions concerning matters that are the subject of pending or impending litigation. Specifically, I am referring to the case of Forrest City Advertising Promotions Commission vs. Forrest City, Case No. CV-2007-171-3 filed in the Circuit Court of Saint Francis County.
Although this case does not involve the City of Eureka Springs, its ultimate resolution, if appealed, could provide an answer to the question you pose. I must, therefore, decline to offer an opinion on this issue. In an effort to be helpful, however, I have enclosed a copy of Op. Att'y Gen. 2007-055 that addresses the question of whether an A P Commissioner must be a qualified elector of the city that establishes the commission.
Question Six: The proposed Ordinance also allows for persons in"tourism related" business to serve on the commission. Must acommissioner be a lodging or restaurant owner or manager (one thatcollects the tax)?
One of my predecessor's addressed this issue and concluded that all representatives of the tourism industry in A.C.A. § 26-75-605(a) must be managers or owners of businesses in the tourism industry and that three of the four industry representatives had to be owners or managers of hotels, motels, or restaurants. See Op. Att'y Gen. 2002-305. I agree with my predecessor's conclusion and have attached a copy of Op. Att'y Gen. 2002-305 for your convenience.
Your question appears to be based on the pertinent language of A.C.A. § 26-75-703. The pertinent language of A.C.A. § 26-75-703 is reproduced above in the response to Question Four. As noted above, if Eureka Springs does abolish its previous "hamburger tax" and levy a new tax pursuant to A.C.A. § 26-75-602, the pertinent provision governing the composition of the commissioners would be *Page 13 
A.C.A. § 26-75-605(a) which clearly creates the possibility of a commissioner representing the tourism industry that is not the manager or owner of a hotel, motel, or restaurant.
Question Seven: Proposed Ordinance 2060 refers only to hotels andmotels as collectors of the tax. Should the words "cabins, cottages, bedand breakfasts" etc. be added to clarify and specifically name thosebusinesses as collectors?
It is not the duty of the Attorney General's Office to advise public officials on the crafting of local ordinances. In my opinion, this question addresses a solely local question about the drafting of the ordinance. I recommend consulting local counsel with regard to such matters.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Prior to 1995, there was similar language found in A.C.A. § 26-65-602(d) that required a vote of the populace either under the standards set forth in Amendment 7 to the Arkansas Constitution or if petitions containing five hundred signatures of qualified electors were presented within thirty days of the enactment of the ordinance. See
A.C.A. § 26-75-601(d) (1987) (repealed). This subsection was repealed byAct 931 of 1995 in which the General Assembly stated in the Emergency Clause that there was "urgent need to clarify current law relating to the method by which a hotel and restaurant tax shall be subject to referendum . . ." Act 931 of 1995, § 5.
[2] A question may also arise as to whether the provisions of Arkansas Constitution, art. 5 § 1 have any applicability to a vote undertaken pursuant to A.C.A. § 27-75-702.